```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

FIRST INVESTORS NEVADA REALTY,  :   CIVIL ACTION
LLC, et al.,                    :   NO. 20-4134
                                :
          Plaintiffs,           :
                                :
     v.                         :
                                :
EIS, INC., et al.,              :
                                :
          Defendants.           :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         April 29, 2021

## I.   INTRODUCTION

This is a breach of contract case involving a landlord-tenant agreement. Following the Court's denial of Defendants' motion to dismiss, the Court ordered limited discovery and supplemental briefing as to the issue of subject matter jurisdiction. For the reasons explained below, the Court finds that diversity jurisdiction does not exist with respect to Defendants EIS Buyer, LLC, and EIS Legacy, LLC.

## II.  BACKGROUND

Pursuant to a written lease agreement, Plaintiffs leased an industrial property to EIS, Inc. in 2012. Following several extensions, the then-current lease term ended on March 21, 2017. Plaintiffs then allegedly discovered that EIS, Inc. failed to

properly maintain the premises and to properly restore it to the condition required under the express terms of the lease.

On April 5, 2017, Plaintiffs filed a claim with the American Arbitration Association (AAA) against EIS, Inc. This arbitration is still pending. In 2019, after years of protracted arbitration and during the arbitration, EIS, Inc. allegedly sold its assets or was otherwise acquired by Audax through a series of transactions. Limited information about these transactions is public, and EIS, Inc. refused to disclose the details of the transactions to Plaintiffs. However, there is no question that EIS, Inc. converted from a corporation to a limited liability company, now known as EIS Legacy. Plaintiffs allege that EIS Legacy then transferred its assets and/or stock to EIS Buyer, which is owned and controlled by Audax.

Consequently, Plaintiffs argue that Defendants EIS Legacy, EIS Buyer, and Audax are successor entities and may therefore be liable for Defendant EIS, Inc.'s breach of contract. Furthermore, Plaintiffs allege that Defendants engaged in the aforementioned transfers with the intent to hinder, delay, or defraud Plaintiffs and other creditors.

Plaintiffs bring two counts: 1) Breach of Contract against all Defendants except EIS, Inc., and 2) Violation of Pennsylvania's Uniform Voidable Transactions Act (UVTA) against all Defendants. In response, Defendants filed a Motion to

Dismiss for lack of subject matter jurisdiction (specifically lack of diversity of citizenship), lack of personal jurisdiction, and failure to state a claim under Count II.

The Court denied Defendants' Motion to Dismiss in full. As relevant here, we denied the motion to dismiss for lack of subject matter jurisdiction because evidence of Defendants' allegation that an upstream member of EIS Buyer and EIS Legacy is a citizen of Pennsylvania is unavailable to the public, so we allowed Plaintiffs to engage in jurisdictional discovery to ascertain whether complete diversity exists. Now before the Court are the parties' supplemental memoranda concerning the issue of subject matter jurisdiction.

### III. LEGAL STANDARD

The jurisdiction to hear cases in diversity arises under 28 U.S.C. § 1332(a), which provides that district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." <u>Zambelli Fireworks Mfg. Co. v. Wood</u>, 592 F.3d 412, 419 (3d Cir. 2010) (citing <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 553

3

(2005)). "The key inquiry in establishing diversity is thus the 'citizenship' of each party to the action." Id.

"[U]nlike corporations, unincorporated associations such as [LLCs or] partnerships 'are not considered "citizens" as that term is used in the diversity statute.'" Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 104-05 (3d Cir. 2015) (quoting Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008)). "The state of organization and the principal place of business of an unincorporated association are legally irrelevant" for citizenship purposes. Id. at 105. Instead, the citizenship of an unincorporated association is determined by the citizenship of its members. Id. "For complete diversity to exist, all of the [association's] members 'must be diverse from all parties on the opposing side.'" Id. (quoting Swiger, 540 F.3d at 185).

The burden of establishing diversity jurisdiction rests with the party asserting its existence. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006). "If the defendant . . . mounts a factual challenge [to diversity jurisdiction], the plaintiff is entitled to limited discovery for the purpose of establishing that complete diversity exists." Lincoln Benefit, 800 F.3d at 102. "[T]his inquiry can become quite complicated. '[A]s with partnerships, where an LLC has, as one of its members, another LLC, "the citizenship of unincorporated

4

associations must be traced through however many layers of partners or members there may be" to determine the citizenship of the LLC.'" Id. at 105 n.16 (second alteration in original) (quoting Zambelli, 592 F.3d at 420).

Here, Defendants mounted a factual attack to diversity jurisdiction, arguing that EIS Legacy and EIS Buyer both have an "upstream" member who is and was a Pennsylvania citizen at the time this lawsuit was filed. In reviewing Defendants' factual attack, the Court must allow Plaintiffs "to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006) (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 177 (3d Cir. 2000)). "If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." Id. (citing Gould Elecs., 220 F.3d at 177). Here, the Court has allowed discovery and called for supplemental briefing, determining that there was a factual attack on diversity jurisdiction. Plaintiffs must prove factual issues by a preponderance of the evidence. Lincoln Benefit, 800 F.3d at 105.

### IV. DISCUSSION

Defendants argue that EIS Legacy, LLC, and EIS Buyer, LLC, both have an "upstream" member who is a Pennsylvania citizen;

5

therefore, under Lincoln Benefit, there is no diversity of citizenship. Defendants allege that the members of EIS Legacy, LLC, include EIS Buyer, LLC; the upstream members of EIS Buyer, LLC, include EIS Intermediate Holdings, LLC; the members of EIS Intermediate Holdings, LLC, include EIS Acquisition Holdings, LP; and the limited partners/unit holders of EIS Acquisition Holdings, LP ("Acquisition Holdings") include Robert Baginski, an individual who is a domiciliary and citizen of Pennsylvania. See Defs.' Mot. Dismiss Ex. 1, ECF No. 11 (chart showing organization of EIS-related entities). As such, neither EIS Legacy, LLC, nor EIS Buyer, LLC, would be diverse from Plaintiffs. See Compl. ¶¶ 10-11, ECF No. 1 (both Plaintiffs are citizens of Pennsylvania).

Given that Defendants did not previously provide any evidence for their claim about Robert Baginski, and this information seemed to be unavailable to the public, the Court allowed Plaintiffs to engage in jurisdictional discovery in order to ascertain whether complete diversity exists. See Lincoln Benefit, 800 F.3d at 111.

Jurisdictional discovery showed that Baginski was issued a Class P-CCA Unit Certificate dated January 27, 2020 (the "Unit Certificate"). Acquisition Holdings issued 327.9107 units to Baginski. However, Plaintiffs argue that the following language

6

in the Unit Certificate demonstrates that Baginski's units did not vest at the time of issuance:

> <u>Vesting During Employment</u>. Subject to the condition that [Baginski] continues to be employed by the Partnership or any of its Subsidiaries and the other conditions set forth herein, the Units will become vested only as provided in this <u>Section 2</u> and in <u>Section 3</u>. The Units will vest as follows: (a) 50% of the Units will vest in accordance with the schedule set forth on <u>Exhibit A</u> and (b) 50% of the Units will vest as of immediately prior to the consummation of the first to occur of a Sale of the Partnership or a Sale of the CCA Business, but only if such Sale of the Partnership or such Sale of the CCA Business is consummated. Any Units which do not vest under the terms of this Unit Certificate (<u>e.g.</u> due to a Termination (as defined below)) will automatically terminate and be forfeited by the Participant and be cancelled by the Partnership for no consideration.

Unit Certificate 1, ECF No. 24-10.

Plaintiffs allege that according to the vesting schedule, Baginski's units did not start to vest until January 27, 2021. Since Plaintiffs filed their Complaint on August 21, 2020, and diversity jurisdiction is determined at the time the complaint is filed, they argue that diversity jurisdiction exists because Baginski was not technically a limited partner yet and only had an inchoate entitlement to a limited partnership interest.

In response, Defendants first note that the Unit Certificate and Acquisition Holdings' Limited Partnership Agreement ("LP Agreement") provide that they are to be interpreted under Delaware law. When interpreting contractual language under Delaware law, "the court must ascertain 'what a

7

reasonable person in the position of the parties [at the time of contracting] would have thought [that language] meant.'" Wenske v. Blue Bell Creameries, Inc., No. 2017-0699, 2018 WL 3337531, at *10 (Del. Ch. July 6, 2018) (alterations in original) (first quoting Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992); and then citing Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006)). "Like other contracts, limited partnership agreements are to be construed in accordance with their literal terms." In re Nantucket Island Assocs. P'ship Unitholders Litig., 810 A.2d 351, 361 (Del. Ch. 2002). Defendants argue that under the literal terms of the LP Agreement and the Unit Certificate, Baginski was a limited partner as of January 27, 2020 (i.e., the date the Unit Certificate was executed).

The Unit Certificate states that the units are issued to Baginski upon his execution of the Unit Certificate. Unit Certificate 1, ECF No. 25-1 ("Upon execution of this Unit Certificate, the Partnership will issue to the Participant [327.9107] Class P-CCA Units of the Partnership."). The Unit Certificate also expressly incorporates by reference the terms of the LP Agreement. Unit Certificate 11, ECF No. 25-1 ("The execution of this Unit Certificate by the Participant will constitute a counterpart to the LP Agreement, and the Participant, its Permitted Transferees and legal representatives

8

will be bound by the LP Agreement to the extent provided in the LP Agreement.").

Pursuant to the Delaware Revised Uniform Limited Partnership Act ("DRULPA"), limited members of a limited partnership can be admitted in a number of ways:

> § 17-301. Admission of limited partners. . . .
>
> (b) After the formation of a limited partnership, a person is admitted as a limited partner of the limited partnership:
>
>> (1) In the case of a person who is not an assignee of a partnership interest, including a person acquiring a partnership interest directly from the limited partnership and a person to be admitted as a limited partner of the limited partnership without acquiring a partnership interest in the limited partnership, at the time provided in and upon compliance with the partnership agreement or, if the partnership agreement does not so provide, upon the consent of all partners or as otherwise provided in the partnership agreement; . . .
>
> (d) A person may be admitted to a limited partnership as a limited partner of the limited partnership and may receive a partnership interest in the limited partnership without making a contribution or being obligated to make a contribution to the limited partnership. Unless otherwise provided in a partnership agreement, a person may be admitted to a limited partnership as a limited partner of the limited partnership without acquiring a partnership interest in the limited partnership.

Del. Code Ann. tit. 6, § 17-301 (2020).

Accordingly, the terms of the LP Agreement would determine who is a limited partner. The LP Agreement specifically provides

9

the following definition of who will be considered a limited partner:

> "Limited Partners" means the Persons listed as Limited Partners on Exhibit 3.1 and any other Person that both acquires an Interest in the Partnership and is admitted to the Partnership as a Limited Partner, in each case so long as such Person continues to hold any Units and is not a Former Unit Holder.

Limited Partnership Agreement 9-10, ECF No. 25-2.

Defendants argue that Robert Baginski was listed as a limited partner on Exhibit 3.1. either on January 27, 2020, or shortly thereafter, and was thus a limited partner well before the Complaint was filed in August 2020. See Defs.' Mem. re Subject Matter Jurisdiction 10-11, ECF No. 25. Defendants did not attach Exhibit 3.1 to the record, or provide any evidence as to when Baginski was included on the list, so the Court cannot assess the veracity of Defendants' proposition.

However, Defendants claim that they produced Exhibit 3.1 in discovery, and Plaintiffs do not dispute that Baginski was listed as a limited partner on Exhibit 3.1 prior to the filing of this lawsuit. Given the lack of a dispute of material fact as to this issue, the Court need not conduct a plenary hearing before determining whether diversity jurisdiction exists. Although Plaintiffs argue that Baginski cannot be considered a limited partner until his units begin to vest, the Court is bound by the literal terms of the LP Agreement to conclude that

Baginski was a limited partner at the time that the Complaint was filed. Thus, the Court finds that diversity jurisdiction does not exist as to the organizations that Baginski is an upstream member of, i.e., EIS Buyer and EIS Legacy.

**V. CONCLUSION**

As a result of the foregoing, Defendants EIS Buyer and EIS Legacy will be dismissed from the case for lack of subject matter jurisdiction. The Court will hold a status and scheduling conference to determine whether Plaintiffs would like to proceed against Audax and/or EIS, Inc. An appropriate order follows.