```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| FIRST INVESTORS NEVADA REALTY, LLC, et al., | : : : | CIVIL ACTION NO. 20-4134 |
| Plaintiffs, | : : | |
| v. | : : | |
| EIS, INC., et al., | : : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        July 15, 2021

## I.   INTRODUCTION

This is a breach of contract case involving a landlord-tenant agreement. Following the Court's denial of Defendants' Motion to Dismiss, the Court ordered limited discovery and supplemental briefing as to the issue of subject matter jurisdiction. After supplemental briefing, the Court found that diversity jurisdiction does not exist with respect to Defendants EIS Buyer, LLC, ("Buyer") and EIS Legacy, LLC ("Legacy"). Plaintiffs have now filed a motion to reconsider that decision. For the reasons explained below, Plaintiffs' motion will be denied.

## II. BACKGROUND

On October 16, 2020, Defendants filed a Motion to Dismiss the Complaint. Among other issues, Defendants argued that Legacy and Buyer should be dismissed because the Court lacked diversity jurisdiction. Defendants claimed that Pennsylvania resident Robert Baginski was a limited partner of EIS Acquisition Holdings, LP ("Acquisition Holdings"), which is an upstream member of Buyer and Legacy. Thus, Defendants argued that Buyer and Legacy are Pennsylvania citizens as well, thereby destroying diversity jurisdiction since Plaintiffs are both Pennsylvania residents. The issue then became whether Baginski was in fact a limited partner of Acquisition Holdings at the time the Complaint was filed on August 21, 2020.

On November 10, 2020, the Court denied Defendants' Motion to Dismiss and allowed for limited jurisdictional discovery. The Court also ordered supplemental briefing. After supplemental briefing, the Court found that diversity jurisdiction did not exist with respect to Buyer and Legacy because of the following section of the Delaware Revised Uniform Limited Partnership Act ("DRULPA"):

> § 17-301. Admission of limited partners. . . .
>
> (b) After the formation of a limited partnership, a person is admitted as a limited partner of the limited partnership:

> (1) In the case of a person who is not an
> assignee of a partnership interest, including a
> person acquiring a partnership interest directly
> from the limited partnership and a person to be
> admitted as a limited partner of the limited
> partnership without acquiring a partnership
> interest in the limited partnership, <u>at the time
> provided in and upon compliance with the
> partnership agreement</u> or, if the partnership
> agreement does not so provide, upon the consent
> of all partners or as otherwise provided in the
> partnership agreement; . . .
>
> (d) A person may be admitted to a limited partnership
> as a limited partner of the limited partnership and
> may receive a partnership interest in the limited
> partnership without making a contribution or being
> obligated to make a contribution to the limited
> partnership. <u>Unless otherwise provided in a
> partnership agreement</u>, a person may be admitted to a
> limited partnership as a limited partner of the
> limited partnership without acquiring a partnership
> interest in the limited partnership.

Del. Code Ann. tit. 6, § 17-301 (2020) (emphases added).

Accordingly, the Court found that the terms of the Limited Partnership ("LP") Agreement determine who is a limited partner. The LP Agreement here specifically provides the following definition of who will be considered a limited partner:

> "Limited Partners" means the Persons listed as Limited
> Partners on Exhibit 3.1 and any other Person that both
> acquires an Interest in the Partnership and is
> admitted to the Partnership as a Limited Partner, in
> each case so long as such Person continues to hold any
> Units and is not a Former Unit Holder.

Limited Partnership Agreement 9-10, ECF No. 25-1.

Defendants argued that Robert Baginski was listed as a limited partner on Exhibit 3.1 either on January 27, 2020, or

3

shortly thereafter, and was thus a limited partner well before the Complaint was filed in August 2020. See Defs.' Mem. re Subject Matter Jurisdiction 10-11, ECF No. 25. Plaintiffs did not dispute this fact, so the Court found that Baginski was a limited partner of Acquisition Holdings before the Complaint was filed and, consequently, that there was no subject matter jurisdiction as to Buyer and Legacy.

Plaintiffs subsequently filed the instant motion to reconsider the Court's decision, arguing that the LP Agreement was heavily redacted and that the issue cannot be decided without knowing whether other provisions hidden by redactions address the issue as well.

### III. LEGAL STANDARD

The Third Circuit treats motions for reconsideration as functional equivalents to Rule 59 motions. Pitts v. United States, No. CR 10-703, 2015 WL 9244285, at *4 (E.D. Pa. Dec. 17, 2015) (Robreno, J.) (quoting Venen v. Sweet, 758 F.2d 117, 122 (3d Cir. 1985)). Motions for reconsideration are designed to "correct manifest errors of law or fact or to present newly discovered evidence." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (quoting Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)). A motion for reconsideration may be granted if the movant demonstrates one of the following circumstances: "(1) an intervening change in controlling law;

(2) the availability of new evidence; or (2) the need to correct clear error of law or prevent manifest injustice." Id. (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

As the Third Circuit has not definitively circumscribed the "manifest injustice" standard, courts should "'look at the matter on a case-by-case basis' to determine whether a judgment will work a manifest injustice." Conway v. A.I. duPont Hosp. for Child., No. 04-4862, 2009 WL 1492178, at *6 (E.D. Pa. May 26, 2009) (quoting United States v. Jarnigan, No. 08-CR-7, 2008 U.S. Dist. LEXIS 60395, at *6-7 (E.D. Tenn. July 25, 2008)) (citing Att'y Registration & Disciplinary Comm. of the Sup. Ct. (In re Betts), 157 B.R. 631 (Bankr. N.D. Ill. 1993)). However, judges in the Eastern District of Pennsylvania have held that a manifest injustice occurs when there is an error in the trial court that is "direct, obvious, and observable." See, e.g., id. at *7 (quoting Black's Law Dictionary 982 (8th ed. 2004)).

Because federal courts "have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." In re Asbestos Prods. Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011) (Robreno, J.) (quoting Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)). "Courts often take a dim view of issues raised for the first time in post-judgment motions." Kiewit E.

5

Co. v. L&R Constr. Co., 44 F.3d 1194, 1204 (3d Cir. 1995). And "a motion to reconsider may not raise new arguments that could have (or should have) been made in support of or in opposition to the original motion." Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am., No. 09-6055, 2010 U.S. Dist. LEXIS 56758, at *12-13 (E.D. Pa. June 9, 2010) (quoting Helfrich v. Lehigh Valley Hosp., No. 03-5793, 2005 WL 1715689, at *3 (E.D. Pa. July 21, 2005)).

## IV. DISCUSSION

Plaintiffs argue that the Court committed a direct, obvious, and observable error by relying on the redacted LP Agreement, and that it would be a manifest injustice to dismiss Buyer and Legacy when so much of the Agreement has been hidden. Defendants completely redacted 73 pages of the 98-page Agreement, and on the pages that were not completely redacted, Defendants redacted all but a few sentences. Although Plaintiffs argue that the entire Agreement should be unredacted, they take particular issue with the majority of Section 3.1 being redacted. The first (and only unredacted) sentence of Section 3.1 states as follows: "Partners. The Partners of the Partnership will be listed on Exhibit 3.1, as from time to time updated in accordance with this Agreement." Pls.' Mot. Recons. 7, ECF No. 30-1. Plaintiffs argue that by redacting the remainder of Section 3.1, which appears to be three pages long,

6

Defendants are concealing, inter alia, "the procedure for the admission of limited partners, whether the LP Agreement allows the admission of partners prior to their partnership interests vesting, and the timing of the admission of partners after they have acquired a partnership interest." Pls.' Mot. Recons. 6.

In support of their argument, Plaintiffs assert that the following language in DRULPA requires the Court to consider the entire LP Agreement when determining whether a person is a limited partner: "<u>Unless otherwise provided in a partnership agreement</u>, a person may be admitted to a limited partnership as a limited partner of the limited partnership without acquiring a partnership interest in the limited partnership." Del. Code Ann. tit. 6, § 17-301 (2020) (emphasis added). Plaintiffs allege that the Court "could not determine if the LP Agreement had terms that 'otherwise provided' for the admission of limited partners because it has not seen the entire LP Agreement and cannot be sure that there is not an alternative procedure for the admission of limited partners." Pls.' Mot. Recons. 10.

But the Court could, and did, determine that the LP Agreement contained the following unredacted provision that otherwise provided for who may be considered a limited partner:

> "Limited Partners" means the Persons listed as Limited Partners on Exhibit 3.1 and any other Person that both acquires an Interest in the Partnership and is admitted to the Partnership as a Limited Partner, in each case so long as such Person continues to hold any

7

Units and is not a Former Unit Holder.

Limited Partnership Agreement 9-10, ECF No. 25-1. And Plaintiffs do not cite to any authority that supports the proposition that the phrase "partnership agreement" in DRULPA was intended to mean the entire partnership agreement, as opposed to a redacted version of the partnership agreement. Furthermore, even if Section 3.1 does provide alternative procedures for the admission of limited partners, it does not change the fact that Section 3.1 explicitly provides that one possible mechanism for becoming a limited partner is to be listed on Exhibit 3.1. See Pls.' Mot. Recons. 7 ("The Partners of the Partnership will be listed on Exhibit 3.1, as from time to time updated in accordance with this Agreement.")

In any case, "[a] litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one." PBI Performance Prods. V. NorFab Corp., 514 F. Supp. 2d 732, 744 (E.D. Pa. 2007). In other words, "[a] motion for reconsideration may not be used to give a litigant a 'second bite at the apple.'" Id. (quoting Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995)).

For example, in LM General Insurance Co. v. Lebrun, Judge Marston explained that a party's failure to raise an issue of which it was aware at the time of original briefing did not

warrant reconsideration of dismissal, even on "manifest injustice" grounds:

> Next, as LM General rightly points out (see Doc. 45 at p. 3), in moving for reconsideration, a litigant may not raise a new argument that it could have previously asserted but failed to do so. See, e.g., PBI Performance Prods., Inc., 514 F. Supp. 2d at 744 ("A litigant . . . may not use a motion for reconsideration either to attempt a new approach or to correct mistakes it made in its previous one. A motion for reconsideration should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." (quotation marks and citation omitted)); Kennedy Indus., 2006 WL 1892685, at *1 (same); see also Digneo v. City of Philadelphia, Civil No. 07-2372, 2008 WL 11515930, at *1 n.1 (E.D. Pa. June 13, 2008) ("[A] Motion for Reconsideration cannot be granted based on . . . newly raised arguments that could have previously been asserted"); accord United States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) ("In order to show clear error or manifest injustice, the [moving party] must base its motion on arguments that were previously raised but were overlooked by the Court." (emphasis added)).
>
> Here, in their motion for reconsideration, the LeBruns argue, for the very first time, that dismissal of the declaratory judgment claims "may result in an unfair and unjust deprivation of the rights of putative class members" because the LeBruns may "be unable to secure [class] certification" of the compensatory relief (i.e., breach of contract) claims, which are the only claims left. (Doc. No. 41-1 at p. 3.) Even though the LeBruns could have made this very same argument in their initial opposition to LM General's motion to dismiss, they declined to do so. . . . In raising a new argument in this final hour (and where that argument is not based on newly discovered evidence, but could have been raised all along), the LeBruns are essentially asking us to flout the motion for reconsideration standard. We will not do so.
>
> Finally, we note that although "[t]here is a dearth of case law within the Third Circuit discussing

the standard to be applied when dealing with manifest injustice" (i.e., the standard for what constitutes a manifest injustice), it is "clear that the standard is a high one." Conway v. A.I. DuPont Hosp. for Children, Civil Action No. 04-4862, 2009 WL 1492178, at *6-7 (E.D. May 26, 2009) (citations omitted). Plaintiffs have failed to fulfill that high burden and have not shown that our ruling constitutes manifest injustice here.

No. 19-2144, 2020 WL 7640927, at *4 (E.D. Pa. Dec. 23, 2020) (alterations in original) (footnotes omitted).

Similarly here, although Plaintiffs pointed out in their supplemental briefing that the LP Agreement was heavily redacted, they failed to argue that the redaction materially affected the ability to address Baginski's limited partnership interests, despite having received Defendants' interrogatory answer demonstrating that Defendants were going to rely on the Unit Certificate <u>and</u> the LP Agreement to establish that Baginski was a limited partner.[1] Furthermore, after receiving this discovery and a copy of the redacted LP Agreement, Plaintiffs

---

[1] Defendants' interrogatory answer stated as follows:

Of particular relevance to this matter, one of individuals holding limited partnership units in Acquisition Holdings is Robert Baginski, who is a domiciliary and citizen of Pennsylvania. Effective January [27], 2020, Mr. Baginski was a limited partner/member of Acquisition Holdings; was <u>subject to the terms and restrictions of the Limited Partnership Agreement; was identified on Schedule 3.1, pursuant to its Limited Partnership Agreement, of Acquisition Holdings' list of partners (or was listed on a schedule generated shortly thereafter) and, thus, defined as a partner under that Agreement</u> . . . .

Defs.' Resp. Opp'n Pls.' Mot. Reconsideration 3, ECF No. 34 (alteration in original).

explicitly represented to the Court during a January 22 discovery conference that they had all facts necessary to address the discrete issue of diversity jurisdiction.[2] Given Plaintiffs' failure in their supplemental briefing to persuade the Court to adopt their position, they cannot use a motion for reconsideration either to attempt a new approach or to correct the mistake they made in their previous approach. See <u>PBI Performance Prods., Inc.</u>, 514 F. Supp. 2d at 744. Thus, Plaintiffs' Motion for Reconsideration will be denied.

**V. CONCLUSION**

As a result of the foregoing, Plaintiffs' Motion for Reconsideration will be denied. An appropriate order follows.

---

[2] THE COURT: Do you have all the discovery that you need to address the issue of diversity?

MR. BURDETT: It's stipulated that it's really down to this one individual and I am taking them at their word that they've provided us with all documents showing that that -- the individual's purported interest in the upstream member. . . .

THE COURT: Well, you either accept them or you don't accept them. The question is, are you agreeing that those are the facts and let the cookie crumble then or are you contesting those facts and asking for discovery as to the question of diversity?

MR. BURDETT: As to the question of diversity, we accept the stipulated facts.

Disc. Conference Tr. 13:3-8, 16:21-17:2.